June 10, 1949

**No. 53251.**—W. R. Zanes & Co. *v.* United States, protests 78497–K, 78498–K, and 91966–K (Houston).

Mollison, Judge: The plaintiff in this case imported into the United States at the port of Houston, Tex., under dutiable entry 105–H of 1948, certain tungsten metal powder upon which duty was paid at the appropriate rates under the existing tariff law. The said tungsten metal powder was transferred and delivered to the Reed Roller Bit Co. under certificate of delivery 97, issued November 20, 1939, which latter company proceeded to use the same in the manufacture of bits, cutter heads, etc. In accordance with the customs regulations, certificates of manufacture were filed with the collector. It appears that the tungsten metal powder shown upon such certificates to have been used in the manufacture of articles to be exported was charged by the collector against the quantity of tungsten metal powder shown on the certificate of delivery. It further appears that more tungsten metal powder was covered by the certificates of manufacture than was covered by the import entry and certificate of delivery.

The plaintiff herein filed drawback entry No. 2 with the accompanying proofs showing the exportation of certain bits, cutter heads, etc., and claiming drawback to the extent of $276.32. The present protest arises because of the disallowance by the collector of customs at the port of Galveston of a portion of the drawback claimed in said drawback entry No. 2 on the ground that the disallowed portion related to tungsten metal powder in excess of the quantity shown to have been originally imported.

When the protest was called for trial at the port of Houston motion was made by counsel for the Government to dismiss the same "upon the ground that it is not distinct and specific in its allegations as provided for in Section 514 of the Tariff Act of 1930. It does not make any distinct or specific claim with regard to any violations by the collector of any of the provisions of the Tariff Act, as provided for in Section 514, of the Tariff Act of 1930." The motion to dismiss was taken under advisement by the judge presiding on circuit for ultimate disposition by this division.

At the same time a motion to amend the protest was offered by counsel for the plaintiff, but upon objection on the part of counsel for the Government that timely notice thereof under the rules of this court had not been given, it was withdrawn, and, so far as the record shows, it was not offered again.

While the protest is rather brief and succinct, it nevertheless to our minds is sufficient to invoke the jurisdiction of this court. It incorporates by reference the claims made in the drawback entry, and it appears that the collector was thereby apprised of the nature and extent of the claims made. The motion to dismiss is therefore overruled.

Plaintiff contends that the collector acted improperly in charging against the total amount of imported tungsten metal powder shown on the certificate of delivery the quantities of tungsten metal powder shown by the certificates of manufacture to have been used in the manufacture of articles to be exported. It contends that, instead, the quantities shown by the various *drawback entries* and accompanying proofs to have been used in the manufacture of such articles as were *actually exported* should have been charged against the imported quantity. In other words, the certificates of manufacture, while indicating the *use* of the

imported material (or substitute therefor under section 313 (b) of the tariff act) in the manufacture of articles in the United States, do not indicate or establish the *exportation* of, or the payment of drawback on, such articles.

It must not be overlooked that in the case of a non-ferrous metal (which we assume the tungsten metal powder here involved to be) substitution of domestic merchandise of the same kind and quality as the imported duty-paid non-ferrous metal is permitted under section 313 (b) of the Tariff Act of 1930. Conceivably, articles manufactured in the United States with the use of imported or substitute drawback material might appear on a certificate of manufacture and the articles never exported, or, if exported, drawback might be disallowed for some reason. Yet, if the quantity of imported or substitute material represented by such articles were charged against the original imported quantity of drawback material, the amount of drawback payable, or the drawback potential, so to speak, would be improperly reduced. Drawback is payable upon the *exportation* of articles; not upon their manufacture. By reason of the privilege of substitution, it would appear that the drawback potential of the original imported material is properly chargeable only with quantities upon which drawback has been allowed.

Thus, the contention of the plaintiff as to the proper procedure to have been followed in this case would appear to be sound, but, unfortunately, there is not sufficient in the record before us to enable us to come to any conclusion dispositive of the matter. The record does not show in a formal way the facts of importation, manufacture, exportation, and compliance with the applicable customs regulations, or any concession or admission in the absence of such evidence, and neither from the official papers nor from the record made at the trial are we able to determine to what extent drawback of the duties paid upon the importation of the tungsten metal powder has been allowed.

In view of this state of the record, we conclude that it would be in the interests of justice if the submission of this protest was set aside and the case restored to the next Houston docket for the purpose of allowing the parties to complete the record as above indicated.

It is so ordered.

We observe, also, that other protests, Nos. 78498–K/3596 and 91966–K/3606, relating to one of the certificates of manufacture here involved, are now pending before this court, having been suspended to await the outcome of the present case. It may well be that a proper determination of the matter would require either consolidation or trial together of the protests involved, and the court therefore orders that protests 78498–K/3596 and 91966–K/3606 be forwarded to Houston with the present protest, No. 78497–K/3595, at the time of the next Houston docket for whatever disposition counsel, subject to the approval of the court, deem advisable.

### DISSENTING OPINION

COLE, Judge: The memorandum and order of the majority accept jurisdiction by the first division of this court over this litigation, which was regularly heard before a single judge on circuit, who was duly assigned to hear and determine the case under authorization issued by the chief (then presiding) judge in accordance with section 518 of the Tariff Act of 1930 (19 U. S. C. § 1518), now 28 U. S. C. 1948 ed. chapter 11, § 254.

To accept jurisdiction in the case at all is somewhat questionable to me, but certainly to consult the record, reverse the ruling of the trial judge, and strike out the order of submission with the direction that additional evidence be offered, is in violation of the position I have taken in my memorandum accompanying order in *Geo. S. Bush & Co., Inc., et al.* v. *United States* (22 Cust. Ct. 158, C. D. 1175), issued May 23, 1949.

Following my reasoning therein, I most respectfully dissent from the majority in this proceeding. In doing so, I am not attempting to differ with the reasoning assigned by the majority in their memorandum. My action is based solely on the belief the division has no right to invoke the procedure that has been followed.