(C. D. 1186)

THE WERNER G. SMITH COMPANY *v.* UNITED STATES

## United States Customs Court, First Division

(Decided September 27, 1949)

*John C. Ray* for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*Howard L. Harawitz,* special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges; COLE, J.,
dissenting on jurisdictional grounds

MOLLISON, Judge: The merchandise the subject of this protest is described on the invoice as "Fish Recovery Oil" and was assessed with duty by the collector of customs at the rate of 2½ cents per gallon under the provision for herring oil in paragraph 52 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 52), as amended by the Icelandic Trade Agreement, T. D. 50956, plus 1½ cents per pound under the provision for fish oil in section 2491 (a) of the Internal Revenue Code (26 U. S. C. 1940 ed. § 2491 (a)), as modified by the Icelandic Trade Agreement, *supra.*

The protest claims that the merchandise is properly dutiable at only 7½ per centum ad valorem under the provision for waste, not specially provided for, in paragraph 1555 of the Tariff Act of 1930, as amended by the trade agreement with the United Kingdom, T. D. 49753, and, alternatively, that duty was taken upon an excessive quantity. This last claim was abandoned by counsel for the plaintiff at the trial, and need not be further considered.

The defendant, by its attorney, has conceded the correctness of the claim that the merchandise is not dutiable as herring oil under paragraph 52 of the tariff act, as amended, as assessed by the collector, and that it is properly dutiable as waste, not specially provided for, under paragraph 1555, as amended, as claimed in the protest. It is likewise conceded by the defendant that the merchandise is not properly subject to the tax imposed under section 2491 (a) of the Internal Revenue Code, but it is contended by the defendant that it is subject to tax under the provisions of section 2491 (c) of the same code.

Inasmuch as the two provisions of the Internal Revenue Code specified are interrelated, for ready reference the pertinent portions are here set out:

§2491. **Rate of tax.**

(a) \* \* \* fish oil \* \* \* fatty acids derived from any of the foregoing \* \* \* all the foregoing, whether or not refined, sulphonated, sulphated, hydrogenated, or otherwise processed, 3 cents per pound \* \* \*

\*      \*      \*      \*      \*      \*      \*

(c) Any article, merchandise, or combination * * * 10 per centum or more of the quantity by weight of which consists of, or is derived directly or indirectly from, one or more of the products specified above in this paragraph * * * a tax at the rate or rates per pound equal to that proportion of the rate or rates prescribed in this paragraph * * * in respect of such product or products which the quantity by weight of the imported article, merchandise, or combination, consisting of or derived from such product or products, bears to the total weight of the imported article, merchandise, or combination; but there shall not be taxable under this subparagraph any article, merchandise, or combination (other than an oil, fat, or grease * * * ), by reason of the presence therein of an oil, fat, or grease which is a natural component of such article, merchandise, or combination and has never had a separate existence as an oil, fat, or grease * * *

\* \* \* \* \* \* \*

The merchandise at bar consisted of the settlings from the bottom of a large storage tank for crude fish oil, which settlings were obtained in the following manner: Crude fish oil was obtained from pilchards and herrings by a boiling and expression process. The crude oil was shipped to the plaintiff's plant in Canada and pumped into large settling tanks. It was there allowed to settle and the oil from the upper level was from time to time drawn off, leaving dirt, moisture, and mucilaginous or mealy matter on the bottom. The settlings are this latter material and are the merchandise imported.

In view of the concessions of the defendant, it must be taken that the correctness of the plaintiff's claim as to the regular duty properly assessable under the provisions of the Tariff Act of 1930 has been established, i. e., that it is properly dutiable at the rate of 7½ per centum ad valorem under the provision for waste, not specially provided for, in paragraph 1555 of the Tariff Act of 1930, as amended by the trade agreement with the United Kingdom, T. D. 49753. As to the imposition of tax under the Internal Revenue Code, however, a rather unusual situation arises. The presumption of correctness attaching to the classification by the collector under section 2491 (a) of the Internal Revenue Code has been overcome and the contention of the plaintiff that the merchandise is not taxable thereunder must be sustained. However, the defendant now comes before the court with what amounts to a counterclaim, i. e., that the merchandise is taxable under section 2491 (c). There is no presumption of correctness attaching to this claim by the defendant, and the burden of proof in relation to it is upon the defendant.

The defendant's contention is based upon evidence adduced at the trial that approximately 22 per centum of the waste in question consisted of water, 60 to 61 per centum fatty acids, 12 to 14 per centum neutral oil, and some 3 per centum unsaponifiable matter and dirt. It is claimed that the fatty acids and neutral oil found in the waste were derived directly or indirectly from the original fish oil and that

hence the merchandise is taxable under the provisions of section 2491 (c), *supra.*

Unfortunately, this contention was not made at the trial but first appears in the brief filed on behalf of the defendant. Consequently, we do not have the benefit of testimony or evidence directly related to the claim and offered or given with the claim in mind.

One of plaintiff's witnesses, a chemist, testified on cross-examination that he would consider the imported product "a waste product containing a certain amount of crude fatty acids from herring oil," (R. p. 19), while another of plaintiff's witnesses stated that "a modification of those fatty acids was no doubt present in the original crude oil" (R. p. 41). The latter witness, a chemist with considerable experience in fatty acids and fish oils, explained the presence of the fatty acids as follows:

\* \* \* this fatty acid is due to a settling in large tanks over a long period of time, and during the settling you have mucilaginous matter, lecithins, phosphatides, and some of the fish meal, and probably scales, dirt, and water that settles down, and as this material is concentrated, it has also concentrated bacteria and enzymes which start a reaction, or a decomposition in this settling. It breaks the oil down into glycerine and fatty acids, but they are not the true fatty acids of the fish oil. And the reason for that is that during decomposition, it is more of an oxidation process, and peroxyacids are formed, and some aldehydes and other decomposition products or polymerized products which cannot be recovered, and they would remain behind as a pitch when processed. (R. p. 29.)

It is important to note the statement of the witness that the fatty acids present in the imported waste product "are not the true fatty acids of the fish oil." This would seem to contradict other testimony tending to indicate that the fatty acids were derived from the original crude fish oil, and would indicate that they were derived at least in part from the settlings.

With respect to the neutral oil content, one of plaintiff's witnesses, giving on cross-examination the details of an analysis of the imported material, testified as follows:

XQ. Neutral oil?—A. Yes.
XQ. Is that fish oil?—A. That's right.
XQ. So that you have a quantity in excess of 10% of fish oil?—A. Yes. I would say it would be a little over 10%. (R. p. 18.)

While at first glance this testimony would seem to bring the imported material within the purview of section 2491 (c), as claimed by the defendant, nevertheless, we note that the statute requires for taxation thereunder that "10 per centum or more of the quantity *by weight*" [italics ours] of the imported article shall consist of or have been derived directly or indirectly from one or more of certain specified products, among which is fish oil. There is nothing in the record to indicate whether the percentages given of the components of the imported material were by weight or by volume.

In order to prevail in its claim that the merchandise took classification under section 2491 (c), *supra*, it was the defendant's burden to establish not only that part, at least, of the imported article consisted of or was derived directly or indirectly from one or more of the specified products, *but likewise to establish that the quantity by weight of the imported material which consisted of or was derived from such specified product or products was 10 per centum or more.* As we view the record, the defendant has failed to meet either of these requirements.

Of necessity, the burden of proof assumed by a plaintiff in connection with the Internal Revenue Code provisions taxing imports is different from that which obtains with respect to the regular duties imposed under the Tariff Act of 1930. In the latter case, merchandise is dutiable unless it is covered by the free schedules, so that a plaintiff has the burden of proving not only that the collector's classification is wrong but that some other classification is correct. With respect to the Internal Revenue Code provisions, only merchandise specifically enumerated therein is dutiable—if it is not named therein, it is free of internal revenue import taxes. The plaintiff, once having proved or established that his merchandise is not taxable under the provision of the Internal Revenue Code involved in the classification of the collector, is not under the duty of proving that it is not classifiable under any other provision of that code.

Since the plaintiff herein fully met the burden of proof imposed upon it by the collector's classification, we have no other course than to sustain the protest claim for duty at the rate of 7½ per centum ad valorem under paragraph 1555, as amended, and judgment will issue accordingly.

### DISSENTING OPINION ON JURISDICTIONAL GROUNDS

COLE, Judge: This case relates to an entry made at the port of Detroit where timely protest was filed. When the protest, with all necessary official papers, was formally received in New York, where the offices of the court are located, 28 U. S. C. (1948 revision) § 251, it was immediately recognized as litigation for hearing at Detroit, to be placed on a calendar for that port, not already prepared and promulgated, but to be fixed at some later date by the chief judge.

The case was the subject of three hearings, all at the port of Detroit, before a single judge on circuit. It never appeared on any calendar of the first division, and none of the members of the division participated in any of the hearings.

The case was submitted before Judge Cline, on circuit under statutory authorization issued by the chief judge to hear and determine the cases, 28 U. S. C. (1948 revision) § 254, as amended by Public Law 72, 81st Cong., 1st sess., sec. 66 (formerly section 518 of the Tariff

Act of 1930, 28 U. S. C. 1946 ed. § 296). The official designation, assigning Judge Cline to the circuit on which the case appeared, should be accepted as still in effect. Accordingly, the protest should be referred to the trial judge for ultimate disposition.

My views on the subject are set forth in *Geo. S. Bush & Co., Inc., et al.* v. *United States*, 22 Cust. Ct. 158, C. D. 1175, *Fuchs Shoe Corp.* v. *United States*, 22 Cust. Ct. 338, Abstract 53250, and *W. R. Zanes & Co.* v. *United States*, 22 Cust. Ct. 339, Abstract 53251.