(C. D. 1302)

B. WESTERGAARD & CO. *v.* UNITED STATES

## United States Customs Court, Second Division

(Decided February 15, 1951)

*Barnes, Richardson & Colburn* (*Eugene F. Blauvelt* of counsel) for the plaintiff.. *David N. Edelstein,* Assistant Attorney General (*Richard H. Welsh* and *Arthur R. Martoccia,* special attorneys), for the defendant.

Before LAWRENCE and RAO, Judges; FORD, J., not participating

LAWRENCE, Judge: Certain cutting implements, described on the consular invoice as "Cheese Cutters," imported from Norway, were classified by the collector of customs as table, kitchen, or household utensils, which are enumerated in paragraph 339 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 339), and duty was assessed thereon at the rate of 40 per centum ad valorem.

It is claimed by the plaintiff that the merchandise is properly dutiable at 4 cents each and 25 per centum ad valorem as cheese knives within the scope of paragraph 355 of said act (19 U. S. C. § 1001, par. 355), as modified by the trade agreement between the United States and the United Kingdom (74 Treas. Dec. 253, T. D. 49753).

A sample illustrating the merchandise was received in evidence and marked exhibit 1. It is shaped somewhat like the conventional pie knife. The blade is of flexible steel with rounded edges, and near the heel the blade is curved upward and is permanently attached to a metal handle. In the curved portion of the blade a lateral slot has been cut, about 2¼ inches long and one-eighth of an inch wide, one edge being turned under slightly and sharpened so that in drawing the implement across a piece of cheese, a convenient slice the size of the opening is cut for use. The metal handle of the cutting implement extends up through a hard white material.

Various other exhibits were introduced in evidence, as follows:

Exhibit 2, being a catalog or price list issued by plaintiff in 1927, wherein articles like those in controversy are described at page 16 as " 'Spar' Cheese Knives * * *."

Exhibit 3, a current price list issued by plaintiff, wherein merchandise such as exhibit 1 is described on page 9, line 3, as "Spar Norwegian Cheese Knives: White Natural Catalin handles."

Collective exhibit 4, samples of magazine advertising introduced primarily to show that the articles were advertised generally as "cheese knives."

Exhibit 5, a report from the United States Customs Laboratory at the port of New York, stating that the handle of the imported article "is composed of synthetic phenolic resin, cellulosic filler material and pigment, the synthetic resin serving as chief binding

agent. It is not made of any of the specific substances described in the above request." The request referred to reads as follows:

* * * of what material the handle of Exhibit 1 is composed; specifically * * * celluloid, pyroxylin or casein or similar material.

However, it was stipulated between counsel for the parties hereto that the handle of exhibit 1 is similar in all material respects to celluloid or any pyroxylin or casein specifically enumerated in the language of said paragraph 355, *infra*.

The sole witness in the case, Mr. Westergaard, senior partner of the importing firm, testified that he had imported merchandise like exhibit 1 since November 1926; that he had always ordered the items under the name "Spar cheese knives, white handles," and under that name they were sold throughout the United States during the period he had been handling them. The name by which they are known is also borne out by reference to exhibits 2 and 3 and collective exhibit 4.

It appears from the testimony of Mr. Westergaard that he had seen them used in homes, in restaurants, and on steamers, and that they were designed to cut hard or soft cheese; that if it were desired to cut a thick or thin slice, it would be done by drawing the implement toward the one using it, but that the outer edge of the blade would be used if one wanted to cut out a "chunk"; and that it is used exclusively for cutting cheese.

The applicable provision of paragraph 339, *supra*, adopted by the collector in his classification of the merchandise, reads:

Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for: * * * composed wholly or in chief value of copper, brass, steel, or other base metal, not plated with platinum, gold, or silver, and not specially provided for, 40 per centum ad valorem; * * *

The pertinent portion of paragraph 355, *supra*, as modified by the trade agreement with the United Kingdom, *supra*, relied upon by the plaintiff, reads:

Table, butchers', carving, cooks', hunting, kitchen, bread, cake, pie, slicing, cigar, butter, vegetable, fruit, cheese, canning, fish, carpenters' bench, curriers', drawing, farriers', fleshing, hay, sugarbeet, beet-topping, tanners', plumbers', painters', palette, artists', shoe, and similar knives, forks, and steels, and cleavers, all the foregoing, finished or unfinished, not specially provided for:

  *       *       *       *       *       *       *

    With handles of hard rubber, solid bone, celluloid, or any pyroxylin, casein, or similar material:

        Table, carving, cake, pie, butter, fruit, cheese, and fish_____ 4¢ each and 25% ad val.

The issue before the court is whether the imported articles are cheese knives or household utensils, not specially provided for.

Defendant cites the following definition of a cheese knife as it appears in Webster's New International Dictionary, Second Edition, 1936:

**cheese knife.** * * * **b** A knife with a curved blade, for cutting cheese.

and from this definition it is argued that "Exhibit 1 has a straight blade cut in the center of the article and a curved edge making an article which resembles a server for pies or cakes, etc."

It will be observed that in *United States* v. *Marshall Field & Co.,* 19 C. C. P. A. (Customs) 331, T. D. 45483, at page 333, the court held with respect to an article of glass:

While the article may not be a jar, if that word be narrowly construed under the dictionary definitions, there is nothing about the article that positively excludes it from coming within the dictionary definition of a jar.

Likewise we find nothing in the foregoing definition of a cheese knife which would inherently exclude therefrom an implement such as exhibit 1, since the record establishes without contradiction that it has been exclusively used during the past 24 years for cutting cheese.

Defendant further argues that—

* * * The fact that Exhibit 1 actually slices soft cheese evenly in thin slices varying up to several inches, does not make it a cheese knife. It is a *cheese slicer or cutter.* It certainly does not rise to the dignity or definition of a knife. [Italics supplied.]

It may be noted in passing that paragraph 355, *supra,* not only provides for cheese knives, but also for "slicing" knives.

It is also argued by the defendant that—

* * * the provision for cheese knives in paragraph 355 contemplates regular cheese knives, not a slicer or shaver or cutter. Moreover, a cheese knife will only cut cheese. It will not shave it. Exhibit 1 shaves the cheese and is, therefore, not a cheese knife. * * *

We are not impressed by this argument, as it is difficult to contemplate an implement which will shave cheese or any other article without at the same time cutting it.

Plaintiff cites the case of *William Adams, Inc.* v. *United States,* 6 Cust. Ct. 156, C. D. 452, wherein certain so-called butter spreaders were held to be properly dutiable in paragraph 355, *supra* (unmodified), as butter knives. In the course of its opinion, this court said:

From this record we are satisfied that the so-called butter spreaders in question are knives in the ordinary meaning of that term. They have a handle and a blade, and, being used for the purpose of cutting as well as spreading butter, in our opinion they come within the *eo nomine* provision in said paragraph 355 for butter knives.

The case before us presents a clear analogy in that exhibit 1 has a handle and a blade and is used exclusively for cutting cheese, and we are satisfied that it falls within the provision in paragraph 355, as modified, *supra,* as a cheese knife. Even if it be allowed that the

article is a household utensil within the meaning of paragraph 339, *supra*, the provision for cheese knives is the more specific. It will be observed that many of the knives specifically enumerated in paragraph 355, such as table, kitchen, bread, cake, and pie knives, for illustration, are undoubtedly household utensils, but unquestionably Congress did not intend that the provisions of paragraph 339 should invade and control over the provisions of paragraph 355. While the provision in paragraph 339, *supra*, for household utensils is a provision by use (*Frank P. Dow Co., Inc.* v. *United States*, 21 C. C. P. A. (Customs) 282, T. D. 46816), it cannot in the circumstances of this case be deemed controlling for the simple reason that Congress has clearly evidenced a different intent. Moreover, it may properly be said that the provisions of paragraph 355, *supra*, are, in their nature, use provisions, the name of each of the knives enumerated indicating its intended employment.

We have examined the cases of *United States* v. *The Cottage Creamery Co.*, 22 C. C. P. A. (Customs) 290, T. D. 47346, and *A. Kastor & Bros.* v. *United States*, 7 Treas. Dec. 871, T. D. 25335, cited by the defendant, but find them inapplicable to the proper determination of the issue involved.

Upon the record before us we hold that the importation in controversy consists of cheese knives which properly fall, for duty purposes, within the provisions of paragraph 355, as modified, *supra*. That claim of plaintiff is sustained, and judgment will be entered accordingly.