(C. D. 1437)

INTERNATIONAL HARVESTER COMPANY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided July 2, 1952)

*Wallace & Schwartz* (*Joseph Schwartz* and *Barnes, Richardson & Colburn* (by *Edward N. Glad*) of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: A mechanical device utilized for processing sisal was classified by the collector of customs as a machine, not specially provided for, and duty was assessed thereon at the rate of 15 per centum ad valorem pursuant to the provisions of paragraph 372 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 372), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, effective January 1, 1948.

Plaintiff contends that the importation should have been classified as "textile machinery," not specially provided for, "for manufacturing or processing vegetable fibers," and dutiable at 10 per centum ad valorem as provided in paragraph 372, as modified, *supra.*

The pertinent portions of paragraph 372, as modified, *supra,* read as follows:

Machines, finished or unfinished, not specially provided for:

* * * * * * * * * * * * *

 Other (except wrapping and packaging machines; food grinding or cutting machines; machines for determining the strength of materials or articles in tension, compression, torsion, or shear; machines for making paper pulp or paper; machines for manufacturing chocolate or confectionery; and internal-combustion engines) _____ 15% ad val.

Textile machinery, finished or unfinished, not specially provided for (except looms and machinery for making synthetic textile filaments, bands, strips, or sheets):

 For textile manufacturing or processing prior to the making of fabrics or woven, knit, crocheted, or felt articles not made from fabrics (except bleaching, printing, dyeing, or finishing machinery):

 For manufacturing or processing vegetable fibers_____ 10% ad val.

Neil Loynachan, the only witness in the case, was called by plaintiff. He testified in substance that he was the general manager of the fiber and twine division of the plaintiff company with which he had been associated for 29 years; that he was entirely familiar with the process and equipment used in its plant and was well informed of the use

made of the imported machine in the Chicago mill; that he had also worked in a cotton mill and was familiar with the machinery used there.

He described the imported machine as follows:

Well, the principal part of the machine is a large circular drum covered with very quite fine pinning. This pinning has either a wood or a steel back, depending on the drum that it is on and then there are three smaller drums that also connect with the machine. The material to be carded is put in the front.

This, he said, was a carding machine, and when interrogated as to the kind of material which was processed in this machine, he replied:

Well, there are two different types of material. One is the dirt and small fibers that have been dropped out of the sliver or the fiber going through the process in making twine and swept up and it is then shaken and the dust shaken out and the resulting material which goes by the name of "mud" in the mill is put into this carding machine to reclaim as far as possible the little short fibers. * * * Of sisal.

Describing the operation of the machine further, the witness testified:

Well, the material is put into the machine and the big drum, revolving in a downward motion, catches it and as it goes down a little further there is another smaller roll which works in the opposite direction and pulls it to pieces, still allowing some to stay on the pins and as it goes around that again contacts the pins and more material is pulled off and as the drum revolves further there are two other sets of what we call worker rolls revolving in opposite directions continuing pulling and straightening and putting this material in a sheet or a film. Then when it gets to the top of the revolution on the opposite side there is another roll that works in the same direction that takes that film off and there is a bar across that we call the stripper. It strips this film off and it then goes down into a chute in the form that we call sliver or an end.

It appears from the record that the "sliver" or "end" referred to by the witness is a transparent sheet of very short fibers which have been drawn into a sliver about 3 inches in diameter; that the sliver so produced is put on a draw frame and is combed and twisted into a yarn. The yarn is then put into a machine called a "former" which twists three strands together to form a rope, and so far as the record discloses, the only use for such rope is as binder twine.

It was also brought out by this witness that he was familiar with machinery of similar construction used in cotton mills but different in the respect that the machine here in controversy is much larger and the "pinning" much coarser than that used in the structure of a cotton carding machine, this being due to the difference in the character of cotton fibers as compared with sisal fibers for instance.

On cross-examination, the witness testified that the imported machine cannot be used on cotton because the "pinning" is too coarse but that it could be used on other fibers such as jute, phormium,

and kenaf. However, it seems to be undisputed that the machine here under consideration is, in fact, used in the initial process in the manufacture of rope and there is no evidence in the record before us to show that the involved machine or any identical machine had ever been used on jute, phormium, or kenaf fibers.

The question for our determination, therefore, is whether a machine whose structure and function as described herein is "textile machinery" within the meaning of paragraph 372, as modified, *supra.*

While it cannot be doubted that the machine is one used for "processing vegetable fibers," to quote the language of paragraph 372, *supra,* a machine used for that purpose must, nevertheless, be *textile machinery,* as judicially defined, in order to come within the purview of said paragraph.

A case frequently referred to in determining the scope and meaning of the words "textile machinery," is *Whitlock Cordage Co.* v. *United States,* 13 Ct. Cust. Appls. 656, T. D. 41490. In the opinion of the court in that case, the merchandise was referred to as rope-making machines consisting of a "breaker card," a "third and finishing drawing frame," a "regulating gill spinning frame," a "24 spindle patented twister," and parts for those articles. The court stated in its opinion that "From the testimony in the record it plainly appears that the purpose of processing textile fibers by means of the breaker card, drawing frame, and spinning frame is to produce yarn. The yarns so produced are twisted into strands, and the strands into rope by means of the machine, known as the '24 spindle patented twister.'" The court was of the opinion, however, that the yarn was also suitable for weaving and was, therefore, textile material.

The court concluded that the breaker card, the third and finishing drawing frame, and the regulating gill spinning frame used in the manufacture of yarn, which is a textile material, were within the provision for all other textile machinery and that the 24-spindle patented twister used in twisting the yarn into strands, and the strands into rope, its function being "to manufacture a textile material into a product which is not a textile * * *" and which does not make "textile materials available for textile uses," was not textile machinery.

In *United States* v. *Samuel Shapiro & Co.,* 18 C. C. P. A. (Customs) 165, T. D. 44374, the court was concerned with the dutiable classification of certain merchandise described as "Jute Twine Manufacturing Machinery" which was used for processing the raw material to a certain degree and, by further processing on other and different machines, was made into twine or cord, and found that the product of the machine there in controversy could not be utilized in the manufacture of jute cloth.

In the course of its opinion, the court distinguished the *Whitlock Cordage Co.* case, *supra.* To quote:

The Government insists quite earnestly that the instant case is controlled by this court's decision in *Whitlock Cordage Co.* v. *United States*, 13 Ct. Cust. Appls. 656, T. D. 41490.

In that case the court, speaking through Judge Hatfield, held (we quote the syllabus) that:

> Machines which manufacture textile fibers into yarns for making ropes are classifiable as "all other textile machinery" under paragraph 372, Tariff Act of 1922. * * *

The distinction between that case and the instant one is found, we think, in the different findings of fact in the respective causes.

In the *Whitlock* case this court said:

> There is *nothing in the record* to indicate that the yarn made by this machinery is not suitable for weaving, and from an examination of the exhibit in the case, we think it is suitable for such purposes. It is, therefore, textile material. [Italics ours.]

See also *United States* v. *Columbian Rope Co.*, 22 C. C. P. A. (Customs) 143, T. D. 47110, wherein it was held that machines which were specially designed and exclusively employed in the preparation of raw material for use in the manufacture of cordage were not textile machinery.

The decision of the collector of customs carries with it the presumption that the machine in controversy was used in developing a product which could not be commercially utilized in the manufacture of textile material.

Upon a careful examination of the record, we do not find evidence which in any way tends to establish that the machine in controversy is suitable for weaving or for use in the manufacture of textile material. On the contrary, the only use of the machine shown by the record herein is for the purpose of carding sisal fibers which by the use of other and different machines are twisted into yarns and the yarns subsequently twisted into rope. In view of the decisions above discussed, rope is neither a textile material nor a textile product.

We conclude, therefore, that the presumed correctness of the collector's decision has not been overcome.

The protest is overruled and judgment will issue accordingly.