BEFORE THE SECOND DIVISION, FEBRUARY 23, 1960

**No. 63842.**—Silvercraft Co., Inc. *v.* United States, protests 303726–K, 307908–K, and 307903–K (Boston).

LAWRENCE, Judge: In this proceeding, three protests enumerated in the schedule attached to and made part of the decision herein were consolidated for trial.

The subject merchandise described on the invoices as "Trowels.E.P.N.S." without handles, covered by protests 307903–K and 307908–K, was classified as articles in chief value of metal, plated with silver on nickel silver, and duty was imposed thereon at the rate of 25 per centum ad valorem in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802.

The items on the invoice to which protest 303726–K relates, described as "Cake Trowels EPNS." were classified by the collector of customs as silver-plated tableware in paragraph 339 of said act (19 U.S.C. § 1001, par. 339), as modified, *supra*, and duty was imposed thereon at the rate of 25 per centum ad valorem. At the trial, it was conceded by the Government that the classification in paragraph 339 was erroneous and that said merchandise is now being classified by the collector of customs in paragraph 397, *supra*.

Plaintiff claims that the importations in controversy should be classified as cake, pie, slicing, and similar knives, without handles and with blades 6 inches or more in length, in paragraph 355 of said act (19 U.S.C. § 1001, par. 355), as modified, *supra*, and properly dutiable at the rate of 2 cents each and 12½ per centum ad valorem.

During the course of the trial, it was stipulated that after the imported article has been completed in this country with a handle—represented by exhibit 2—it "is used to serve pieces of pie or cake" after the pie or cake is cut by some other implement.

The pertinent text of the competing statutes is set forth below:

Paragraph 397, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*      \*      \*      \*      \*      \*      \*

    Plated with silver on nickel silver or
        copper, but not in chief value of silver_____ 25% ad val.

Paragraph 355, as modified, *supra*:

\* \* \* cake, pie, slicing, \* \* \* and similar knives, \* \* \* all the foregoing, finished or unfinished, not specially provided for:

\*      \*      \*      \*      \*      \*      \*

    Any of the foregoing without handles:

\*      \*      \*      \*      \*      \*      \*

        With blades six inches or
            more in length \* \* \*_____ 2¢ each and
                                                12½% ad
                                                val.

The issue herein, set forth in the briefs of adversary counsel, "is whether or not the imported merchandise consists of cake, pie, slicing, or similar knives," as provided in paragraph 355, *supra*.

Oscar Miller, the only witness in the case, was called by plaintiff. He testified that, for about 11 years, he had been president of the importing company, engaged in the importation, manufacture, and sale of products handled by that company.

Miller identified exhibit 1 as illustrative of the importation in controversy. It is a trowel-shaped article, without a handle, having indelibly stamped on the underside—

MADE IN SHEFFIELD, ENGLAND
EPNS

After importation, the article is equipped with a handle of sterling silver, porcelain, bamboo, or wood, as illustrated by exhibit 2. In such condition, the merchandise is chiefly sold to gift shops and jewelry stores.

When asked to state how he had seen exhibit 1 used in its completed condition, Miller stated, "Well, the main selling point on it is that it is used to cut and serve. In other words, the edge of it is used to cut usually a jelly mold or a pie or a cake. And after it's cut they use the same utensil to serve." The witness testified that he was familiar with the use of pie and cake knives which were used for both cutting and serving pie or cake; that "We refer to them as pie knives or cake knives or pie servers or cake servers."

Illustrative exhibit 3 was introduced to exemplify a domestic product, which the witness stated is a combination pie or cake knife, server, or lifter.

With reference to exhibit 1, the witness was interrogated by the court as follows:

JUDGE WILSON: Why do you call it a pie knife?
THE WITNESS: We call it a trowel.
JUDGE WILSON: Why do you call it a trowel?
THE WITNESS: Well, because it's shaped like one.
JUDGE WILSON: Do you sell that as a trowel?
THE WITNESS: We call it a trowel in the description in my catalog, but we sell it as a pie or cake knife.
JUDGE WILSON: In your description in the catolog you do not use the word "knife" at all?
THE WITNESS: No; we just call it a trowel.

Illustrative exhibit 4 was introduced as being similar to exhibit 1, except that one edge was serrated, and apparently for that reason was said to be classified by the collector of customs as an unfinished pie or cake knife in paragraph 355.

Defendant offered in evidence a catalog issued by the plaintiff company which was marked exhibit A. Referred to therein as exhibit A-1, on page 2, is an item identical to exhibit 1, but with a handle, identified as "No. 14–18 Trowel 11″ " and described by the witness as a cake trowel. On the same page, an item similar to plaintiff's exhibit 3 is described as "No. 14–86 Cake-Bagel Knife 9″." Defendant's exhibit A-2, appearing on page 6 of exhibit A, illustrates the differences between cake knives, trowels, and breakers.

The foregoing analysis of the record discloses a somewhat confused state of facts, as to whether the imported article is a pie knife, a cake knife, or a cake or pie server or trowel. The record is further complicated by the stipulation of counsel in which it was agreed that the imported merchandise "after it has been completed with a handle, is used to serve pieces of pie or cake after they have been cut."

Plaintiff invites our attention to the following three cases in support of its contention herein. *William Adams, Inc.* v. *United States*, 6 Cust. Ct. 156, C.D. 452; *B. Westergaard & Co.* v. *United States*, 26 Cust. Ct. 77, C.D. 1302; and *Irvin Ware Co.* v. *United States*, 40 Cust. Ct. 281, C.D. 1994.

In the *Adams* case, we held that so-called butter spreaders were knives within the ordinary meaning of that term and were, hence, subject to classification in paragraph 355 as butter knives. In the *Westergaard* case, we held that implements used in cutting or slicing cheese were properly classifiable as cheese knives in said paragraph 355. And, in the *Irvin Ware* case, so-called ejector forks were held properly classifiable as forks in paragraph 355.

It is observable that, in the *Adams* and *Westergaard* cases, the implements in controversy were in fact used as cutting implements and, in the *Irvin Ware* case, the article in issue was actually used as a fork.

In the case at bar, however, whereas there is some testimony that the article here in controversy is used both as a pie or cake cutter and server, the facts seem to have been otherwise settled by the agreement of adversary counsel that the imported article, after it has been completed with a handle, is used to serve pieces of pie or cake after the pie or cake has been cut by some other implement.

On the confused state of the record, we are constrained to hold that the plaintiff has failed to sustain its burden of proof that the imported commodity is in fact a pie or cake knife within the purview of paragraph 355 of the tariff act.

The protests are, therefore, overruled and judgment will issue accordingly.