(C.D. 2686)

M. Pressner & Co. *v.* United States

United States Customs Court, Second Division

(Decided May 17, 1966)

*Siegel, Mandell & Davidson* (*David Serko* and *Allan H. Kamnitz* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Richard J. Kaplan*, trial attorney), for the defendant.

Before Rao, Ford, and Richardson, Judges

Richardson, Judge: This case involves the proper classification of merchandise described on the invoice as "Miniature hunting knife

w/cell. handle" and "tiny hunting knife w/cell. handle," which was imported at New York from Japan, and classified in liquidation as a "hunting knife" under 19 U.S.C.A., section 1001, paragraph 355 (paragraph 355, Tariff Act of 1930), as modified by T.D. 52373 and T.D. 52476. It is plaintiff's claim herein that the subject merchandise is properly classifiable as a manufacture of metal under 19 U.S.C.A., section 1001, paragraph 397 (paragraph 397, Tariff Act of 1930), as modified by T.D. 51802.

It was stipulated by counsel, at the trial, that the involved merchandise is identical to merchandise designated as exhibit 5 in *M. Pressner & Co.* v. *United States*, 49 Cust. Ct. 301, Abstract 67195, and as exhibit 1 in *M. Pressner & Co.* v. *United States*, 44 Cust. Ct. 10, C.D. 2145, the records in which cases have been incorporated in the case at bar. Also, a sample representative of the importation here involved has been received in evidence as exhibit 2 in this case. In both of the incorporated cases, it was stipulated by counsel that the merchandise in question is composed wholly or in chief value of steel or other metal, not plated with platinum, gold, or silver, or colored with gold lacquer. And in both of these prior *Pressner* cases, the court held that the merchandise was not a "hunting knife" within the meaning of paragraph 355 and that the merchandise should be classified, as claimed, as articles wholly or in chief value of steel or metal, respectively, not specially provided for, under paragraph 397.

In the brief submitted on behalf of the defendant, the collector's classification of the subject merchandise as a "hunting knife" under paragraph 355 has been abandoned, and the defendant now claims that the merchandise before the court is properly classifiable under the same paragraph as a "similar knife." Consequently, the issue to be decided is whether the instant merchandise is within the tariff designation for "similar knives" in paragraph 355. The competing tariff provisions, as modified, read as follows:

[355] Table, butchers', carving, cooks', hunting, kitchen, bread, cake, pie, slicing, cigar, butter, vegetable, fruit, cheese, canning, fish, carpenters' bench, curriers' drawing, farriers', fleshing, hay, sugar-beet, beet-topping, tanners', plumbers', painters', palette, artists', shoe, and similar knives, forks, and steels, and cleavers, all the foregoing, finished or unfinished, not especially provided for:

\*    \*    \*    \*    \*    \*    \*

With handles of hard rubber, solid bone, celluloid, or any pyroxylin, casein, or similar material (except table, carving, cake, pie, butter, fruit, cheese, and fish knives, forks, and steels, and any cleavers which are table, carving, cake, pie, butter, fruit, cheese, or fish cleavers_____ 4¢ each and 17½% ad. val.

[397] Articles or wares not specially provided for, whether partly or wholly manufactured:

\* \* \* \* \* \* \*

    Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

    \* \* \* \* \* \* \*

      Other (except slide fasteners and parts thereof) ------------------------- 22½% ad val.

We disagree with defendant's contention that, as to this newly created issue resulting from defendant's change of position, plaintiff has the burden of proof. Where, as here, the Government abandons the defense of the collector's classification of merchandise under protest no presumption of correctness attaches to the collector's classification or to a new claim advanced by the Government to support a different classification under the same rate of duty, where, as here, such other tariff provisions did not enter into the administrative determinations. *United States* v. *R. J. Saunders & Co., Inc.*, 42 CCPA 128, C.A.D. 584; *United States* v. *White Sulphur Springs Co.*, 21 CCPA 203, 205, T.D. 46728. The claim for classification of the merchandise at bar as a "similar knife" is in the nature of a counterclaim as to which defendant has the burden of proof. *The Werner G. Smith Company* v. *United States*, 23 Cust. Ct. 34, C.D. 1186 (reh. den., 23 Cust. Ct. 223, Abstract 53794).

Neither do we agree with the plaintiff that the doctrine of *stare decisis* based upon the holdings of the court in the two previous *Pressner* cases should be invoked here as the basis for resolving the present controversy. Of course, we think that a serious argument in favor of the application of this doctrine could with propriety be made on the consolidated record here involved to the effect that an adjudication that merchandise falls within a not specially provided for base metal basket provision, as was the case in the two *Pressner* cases, implies a determination that classification is precluded elsewhere in the schedule or paragraph. See and compare *United States* v. *Marshall Field & Co.*, 18 CCPA 403, 408-409, T.D. 44642, and *International Harvester Company* v. *United States*, 29 Cust. Ct. 12, 16, C.D. 1437. However, we are not inclined to regard the doctrine of *stare decisis* as being apropos here in view of the fact that the decisions of this court in the two *Pressner* cases were not appealed. In the absence of appellate review and sanction, the invocation of the rule of *stare decisis* on the basis of lower court decisions can sometimes be a precarious basis for disposition of an issue. *United States* v. *R. J. Saunders & Co., Inc., supra* (p. 136). We deem it best to consider

*de novo* the question newly raised as to the scope of the language "and similar knives" in paragraph 355 in the light of the evidence in the augmented record before us.

The evidence on this phase of the case is supplied principally through the testimony of two witnesses called on behalf of the defendant. The first witness, Harry B. Hazelton, Jr., testified that he is the national sales manager of Imperial Knife Associated Companies, that he sold and supervised the sale of knives, cutlery, and flatware in all areas of the United States, that he is familiar with exhibit C, that exhibit D is a page from Imperial's sales catalog which relates to knives such as exhibit C, and that exhibit C is sold to the same classes of customer to whom Imperial sells its larger hunting knives, namely, hardware jobbers, sporting goods jobbers, drug wholesalers, tobacco jobbers, carnival jobbers, variety chains, novelty jobbers, and souvenir jobbers.

Mr. Hazelton stated his opinion that exhibit 5 in the second *Pressner* case and exhibit 2 in the case at bar were exact copies of exhibit C except that the blades on exhibits 2 and 5 are softer and their handles are painted metal instead of plastic as on exhibit C. The blades of all three have been ground and edged so as to produce a cutting edge. In the witness' opinion the question of whether a knife's blade can be bent has no bearing on whether it is a knife, but only on whether it is a good or a poor quality knife. He is familiar with various knives manufactured of steel of varying qualities some of which have blades which can be bent. Regardless of their quality, exhibits C, 2, and 5 are knives because they have been subjected to the additional expense and manufacturing process of grinding and edging. The witness stated that large hunting knives are also sold to souvenir and carnival jobbers for distribution or sale as souvenirs. Based on his experience in the cutlery trade, Mr. Hazelton was of the opinion that a knife is an object with a handle made of varying materials and one or more fixed or folding blades made of steel or other material which have been ground and edged to provide cutting edges.

When the witness was asked what exhibit C was designed to cut, he responded (R. 82):

A. Anything within reason. It could cut paper, string; it could whittle. I demonstrated that it cuts the wood, but to go clear through you need quite a knife.

Mr. Hazelton further testified that he has personally seen knives such as exhibit C used to sharpen pencils and cut string, and has used it for such purposes himself. He stated that knives come in varying qualities, and that some will hold an edge longer than others. And in response to questioning as to whether exhibit 2 is similar to any

of the knives enumerated in paragraph 355, Mr. Hazelton replied (R. 96–99):

THE WITNESS: Well, I believe it is similar to most of the ones you named, in that it is what we call a fixed blade knife, with a blade that has a cutting edge.

Defendant's second witness, Henry P. Baer, is a salesman with the same company which employs Mr. Hazelton, and has had experience selling knives throughout the United States. Mr. Baer testified that he sells knives such as exhibit C as well as larger hunting knives to variety stores, that he has seen knives such as exhibit C displayed together with larger hunting knives in the hardware or sporting goods departments of Woolworth, W. T. Grant, and other such stores, that he sells exhibit C type knives as "midget hunting" or "miniature hunting knives," and that exhibit C type knives sell at retail for 59 or 69 cents.

It is clear from the foregoing evidence, as well as from the arguments addressed to such evidence by defendant's counsel that defendant is proceeding herein upon the theory that the language "and similar knives" in paragraph 355 embraces an article which comes within the definition and common understanding of the word "knife." Thus, in defendant's view as we understand it, any article, which has a steel or other metal blade that offers or exposes a cutting edge and is equipped with a handle so that it can be hand operated, is within the ambit of the paragraph. In any case, we do not interpret the language of the paragraph to be so broad as to admit of classification an instrument or article responding merely to the definition of a "knife." The paragraph in question contains no *eo nomine* provision for knives *per se*. Consequently, the ability of an article to cut would not, of itself, warrant classification of such article under the paragraph in question.

Paragraph 355 classifies knives according to the distinctive utilitarian functions they perform. It is a use provision. *B. Westergaard & Co.* v. *United States*, 26 Cust. Ct. 77, 81, C.D. 1302. See also, Summary of Tariff Information of 1929 on Tariff Act of 1922, page 759; Summary of Tariff Information, 1948, volume 3, part 3, page 137. It, therefore, follows that *use* is the proper criterion with which to apply here the rule of *ejusdem generis* that both parties have urged upon the court as being applicable in the interpretation of the statutory words "and similar knives" in that paragraph. The only evidence of use before the court is that which we are compelled to regard as "suggestive," "casual or occasional," and "fugitive," and this, only with respect to merchandise which is the domestic counterpart of the imported article. There is in the record before us no evidence con-

cerning the uses to which the imported product is put. Visual and physical examination of both the domestic article (exhibit C) and the imported article (exhibit 5) discloses appreciable qualitative differences between the two articles, with the domestic product holding an edge over the imported article qualitywise, in our opinion. Under these circumstances, the court would want to be apprised of the uses to which the imported article is put before we put it in the same category as the domestic article, and such evidence of use is found wanting in the record before us. As such, we cannot find any basis for classifying the involved merchandise as "similar knives" within the meaning of paragraph 355.

The testimony of Richard C. Wolff, called as a witness on plaintiff's behalf, reinforces our belief in the correctness of the court's decisions in the first two *Pressner* cases. This testimony introduces a new element into the case, namely, the viewpoint of the hunting man of more than 30 years' standing and possessor of numerous hunting knives. The uncontradicted and rather emphatic testimony of this witness is to the effect that the merchandise at bar possesses no utilitarian value as a hunting knife. We think it is unnecessary to review and discuss the other evidence in the record. Under all of the circumstances of this case, we hold that the claim of the plaintiff for classification of the instant merchandise as a manufacture of metal under paragraph 397 is sustained.

Judgment will be entered accordingly.