(C. D. 322)

NATIONAL SILVER CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 23, 1940)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiff.

*Webster J. Oliver,* Assistant Attorney General (*Daniel G. McGrath* and *Joseph E. Weil,* special attorneys), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of Los Angeles, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation of so-called salad sets invoiced as 60 dozen spoons and 60 dozen forks, with handles of brass. Duty was levied on the spoons at the rate of 40 per centum ad valorem under paragraph 339 of the Tariff

Act of 1930 as table or kitchen utensils or flatware of the kind therein made dutiable at that rate; and on the forks at the rate of 16 cents each plus 45 per centum ad valorem under paragraph 355 of said act as table forks. It is claimed that the forks are properly dutiable at the rate of 40 per centum ad valorem under said paragraph 339 as table utensils of the kind therein made dutiable at that rate.

A sample of one of the so-called salad sets was admitted in evidence as Collective Exhibit 1, and a report of the Government chemist at the port of New York showing said sample not to be plated with platinum, gold, or silver, or colored with gold lacquer, was admitted in evidence as Exhibit 2.

At the first hearing held at Los Angeles on November 16, 1938, before Keefe, Judge, the plaintiff offered in evidence the testimony of George R. Gulick, United States examiner of merchandise at that port. He identified the sample salad set (Collective Exhibit 1) and testified that he had described it to the collector as a fork with a brass handle.

At the second hearing held at Los Angeles on July 11, 1939, before Keefe, Judge, the plaintiff offered in evidence the testimony of three witnesses, the first, Leland C. McKenzie, buyer of jewelry, clocks, and silverware, for the Broadway Department Store in Los Angeles. He testified that he has personally handled table, butchers' carving, hunting, kitchen, bread, cake, pie, butter, cheese, fish, hay, sugar-beet, beet-top, and painters' knives and forks; that all of said articles were handled in the silverware department of his store. He then testified in part as follows:

Q. Would you please then, Mr. McKenzie, describe as well as you are able to, the various types of knives, forks, or spoons, as to which you have just stated you are familiar. You mentioned first, "table".—A. Table knife would be a blade knife about six inches, with a handle, or it may be a three inch blade used as tableware.

Q. Table fork?—A. Same thing.

\*          \*          \*          \*          \*          \*          \*

Q. Carving?—A. Would be a large cutting knife, usually with a bone handle.

Q. Fork, as applied to carving?—A. Fork, holding the two tines holding the meat.

\*          \*          \*          \*          \*          \*          \*

Q. Would you please examine the article which is on the bench here before you, and which has attached to it a tag marked Collective Exhibit 1, and state whether that article, in your opinion, is any one of the knives or forks that you have just described?—A. No, it is not.

Q. Is it, in your opinion, similar to any one of the knives and forks that you have just described?—A. No, I wouldn't say it is similar.

On cross-examination the witness testified in part as follows:

X Q. Mr. McKenzie, did you ever see merchandise similar to Exhibit 1 used?—A. Yes, I have.

X Q. How is it used?—A. Used as serving salad.

X Q. Is it used alone?—A. Used with the spoon.

\*   \*   \*   \*   \*   \*   \*

X Q. I show you that part of Collective Exhibit 1 which has no tines, and ask you what that is, in your opinion?—A. It is a large serving spoon.

\*   \*   \*   \*   \*   \*   \*

X Q. Have you seen similar merchandise used in the service of salads?—A. Yes, sir.

X Q. Will you please describe how it is used with the service of salad?—A. Used like this, to serve on the plate.   (Witness braces two hands together.)

X Q. That is, you take the merchandise, that part of Collective Exhibit 1 which has no tines, and with another instrument or implement, and you bring the two of them together, thereby mixing the salad, and also to serve the salad; is that correct?—A. Right.

\*   \*   \*   \*   \*   \*   \*

X Q. Now, what is a fork, in your opinion?—A. A fork has a handle with two, or three, or four tines on it.

X Q. Used for either serving or eating food?—A. Not altogether, no.

X Q. But it is commonly recognized as something with a handle and tines?—A. Right.

X Q. And there is an implement, or instrument, or article with tines and a handle that is used in the service of food, and for eating food, which is called a "fork"?   There is such an instrument or article?—A. Yes, an eating fork.

The second witness, George Speer, assistant buyer in the Broadway Department Store in Los Angeles, testified that said store dealt in all kinds of household utensils; that he was familiar with the same type of knives and forks as was described by the previous witness; that a table fork was a 4-tined fork that was used daily; and that in his opinion Collective Exhibit 1 was not similar to any of the forks mentioned in paragraph 355 of the Tariff Act of 1930.

On cross-examination he testified in part as follows:

X Q. You have seen merchandise similar to the 2-tined part of Exhibit 1? \*   \*   \*.—A. Yes, sir.

X Q. Have you seen it in use?—A. Yes.

X Q.   How is it used?—A. As explained before by Mr. McKenzie.

X Q. It is used in the service of salad, and for mixing salad in a bowl, isn't it?—A. Not especially mixes.

\*   \*   \*   \*   \*   \*   \*

X Q. Would you say that the   \*   \*   \*   two tined article of Exhibit 1, is a fork?—A. It is a salad server.

X Q. You wouldn't say it is a fork?—A. If you want to break it down that way, it might be called that, but we buy them usually in sets, usually the bowl and the server is the way we buy them.

The third witness for the plaintiff, Sidney T. Exley, Jr., manager of Harper & Reynolds Corporation, testified that he had bought and sold forks of various kinds; that a table fork was usually a 4-tined fork used for table service, for eating, and sometimes for serving and that neither of the articles comprising Collective Exhibit 1 was any of the forks with which he was familiar.

On cross-examination the witness testified in part as follows:

X Q. Have you ever seen the 2 tined article of Collective Exhibit 1 used for vegetables?—A. I consider that a 4 tined article.

X Q. 4 tined article?—A. Yes.

X Q. Did you ever see that used for the service of vegetables?—A. Yes, if you call lettuce a vegetable.

\*          \*          \*          \*          \*          \*          \*

X Q. You don't know of any other similar forks other than those that are enumerated in paragraph 355?—A. No.

At the close of the plaintiff's evidence it was stipulated by and between counsel for the respective parties in open court that the merchandise at bar was composed in chief value of base metal and not composed of gold, silver, or platinum.

The Government offered in evidence the testimony of Hazel Wray Davey who testified that she was an interior decorator by occupation; that she had seen articles like Collective Exhibit 1 used in the homes in which she was employed for stirring up salad or in serving various kinds of vegetables, and that she had purchased similar merchandise herself at a housefurnishing store as salad sets.

Upon the record counsel for the plaintiff in their brief filed herein contend that the tined article at bar is not a fork or at least is not similar to any of the forks enumerated in paragraph 355 of the Tariff Act of 1930. With this contention we do not agree.

In regard to the question as to whether the article at bar is used as a fork, apart from the sample which consists of an article having two very distinct tines, and which according to one of the plaintiff's witnesses has four tines, the article in question comes within the common meaning of the word "fork" in Webster's New International Dictionary as thus defined:

Fork. n. 1. An instrument or implement consisting of a handle with a shank terminating in two or more prongs or tines, which are usually of metal, parallel and slightly curved, used for piercing, holding, taking up, or pitching anything; specif., a small instrument of this description for use at the table in manipulating food. \* \* \*

The facts established by the uncontradicted evidence bring the article at bar squarely within the above definition. It is also uncontradicted that the fork in question is used at the table for mixing or serving salad or in serving other vegetables. It is therefore a table fork within the meaning of paragraph 355 of the Tariff Act of 1930.

Hence, upon the established facts and the law applicable thereto, we hold that the so-called salad forks in question are properly dutiable at the rate of 16 cents each and 45 per centum ad valorem under said paragraph 355 as table forks, as classified by the collector. All claims of the plaintiff are therefore overruled and judgment will be rendered accordingly.