(C. D. 1994)

Irvin Ware Co. *v.* United States

282

## United States Customs Court, Second Division

(Decided May 15, 1958)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge:   An importation described in the record as ejector forks, with brass handles, chromium plated, was classified by the collector of customs in paragraph 355 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 355), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739, and duty was assessed at the rate of 8 cents each and 17½ per centum ad valorem, this rate having become effective on July 7, 1951, 86 Treas. Dec. 265, T. D. 52763.

Plaintiff claims that the merchandise should be classified as household or kitchen utensils in paragraph 339 of said act (19 U. S. C. § 1001, par. 339), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and dutiable at the rate of 15 per centum ad valorem.   This rate became effective on May 22, 1948, 83 Treas. Dec. 166, T. D. 51909.

The pertinent text of the competing statutes is here set forth:

Paragraph 355, as modified, *supra*:

Table, butchers', carving, cooks', hunting, kitchen, bread, cake, pie, slicing, cigar, butter, vegetable, fruit, cheese, canning, fish, carpenters' bench, curriers', drawing, farriers', fleshing, hay, sugar-beet, beet-topping, tanners', plumbers', painters' palette, artists', shoe, and similar knives, forks, and steels, and cleavers, all the foregoing, finished or unfinished, not specially provided for:

> With handles of silver (not including handles plated with silver) or other metal than aluminum, nickel silver, iron or steel, specially designed for other than household, kitchen, or butchers' use_____ 8¢ each and 17½% ad val.

Paragraph 339, as modified, *supra*:

Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for (except articles composed wholly or in chief value of tin or tin plate, electric flatirons, fly swatters, illuminating articles, and household food grinding or cutting utensils other than meat and food choppers),

whether or not containing electrical heating elements as constituent parts thereof:

\*      \*      \*      \*      \*      \*      \*

    Not plated with platinum, gold, or silver, and not specially provided for:

\*      \*      \*      \*      \*      \*      \*

    Other:
        Composed wholly or in chief value of brass_ _ _ _ 15% ad val.

The Government now relies upon said paragraph 355, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T. D. 52373, which provides the same rate of duty as that imposed by the collector, the only difference in terminology being that contained in the modifying language which reads as follows, the pertinent words here being stressed:

\*      \*      \*      \*      \*      \*      \*

    With handles of silver (not including handles plated with silver) or other metal than aluminum, nickel silver, iron or steel, *and if not* specially designed for other than household, kitchen, or butchers' use_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 8¢ each and
                                   17½% ad val.

A sample of the importation was received in evidence and marked exhibit 1. It was stipulated and agreed between counsel that exhibit 1, including the handle, is in chief value of brass and is plated with chromium; that it is not specially designed for other than household, kitchen, or butchers' use; and, further, that it is a utensil "chiefly used in the household in the kitchen."

Max Irvin, the only witness in the case, testified on behalf of plaintiff substantially as follows: Since 1938, he had been a partner of the importing firm, manufacturing kitchen utensils and importing some specialties and kitchen utensils. He had been importing an article like exhibit 1 for a few years and was familiar with its use in his home and in homes of other people; that it was used in preparing canapes and things of that sort, where the fork is used to pick up olives, hors d'oeuvres, or cold cuts, in order that they may be nicely placed on a plate. His company sells this item to department stores, chain stores, distributors, and jobbers, who resell to the small hardware and houseware stores.

The item in controversy is not a fork, according to witness Irvin, who stated as his reason: "Because it's an ejector device, because of its ejector device. It is a household utensil" and would not be used for the general purposes of a fork on a dining table.

Exhibit 1 is described in the brief of plaintiff as consisting "of a tubular metal handle with two prongs attached to one end. There is affixed about the prongs a metal ejector piece with [*sic*] fastens to a

rod which goes into the handle of the utensil. The rod is attached inside the handle to a tubular shaped piece which extends about 1 inch above the handle and has a knob-like top. There is a metal support on the handle which in use is grasped with the index and third fingers of the hand while the knob-like top is pressed with the thumb." When pressure is applied to the knob-like top, it causes the ejector piece to move over the prongs and expel food from it. When the pressure is released, a spring inside the handle causes the ejector to resume its original position.

Plaintiff takes the position that because the article is not used to convey food to the mouth nor intended for or used in conjunction with a knife, and because of its independent use as above described in the preparation of canapes and hors d'oeuvres, it does not belong in the category of forks.

We are of the opinion, however, that, by reason of its character, construction, and use, the article in controversy is of a type which comes within the common acceptation of the term "fork." The word "fork" is one of broad application.

Webster's New International Dictionary, second edition, 1953, contains the following definition:

fork, *n.* 1. An instrument or implement consisting of a handle with a shank terminating in two or more prongs or tines, used for piercing, holding, taking up, or pitching anything. * * *

The article in controversy responds to that definition in that it is an instrument or implement consisting of a handle with a shank terminating in two or more prongs or tines and used for piercing, holding, or taking up something, and it accords with our understanding of the term "fork." The mere fact that the fork is equipped with an ejector feature does not, in our opinion, remove it from the popular understanding of the word "fork."

We are satisfied that the article represented by exhibit 1 is, in fact, a fork, as that term is popularly understood, and find that it is not only described in paragraph 339 as a kitchen and household utensil but is also enumerated in paragraph 355 as a kitchen fork. Both provisions are, in their nature, enumerations by use. It would appear that Congress, by the specific terms employed in paragraph 355 for kitchen (as well as many other) forks, knives, steels, and cleavers, which are household and kitchen utensils, intended them to be classified in said paragraph 355 as such forks, knives, steels, and cleavers, rather than as household and kitchen utensils in paragraph 339. A construction must, of course, be adopted which will permit an appropriate operation of each paragraph. There is ample room for the operation of the provision for household and kitchen utensils in paragraph 339, without invading the provisions of paragraph 355.

We, therefore, hold that the importation in controversy consists of forks which should be classified in paragraph 355, as modified by the Annecy protocol, *supra*, as now claimed by the Government, and dutiable at the same rate as was imposed by the collector of customs.

The protest is overruled on all grounds and judgment will issue accordingly.