No. 63483.—Fred Roberts Co. *v.* United States, protest 58/419 (San Francisco).

RAO, Judge:   Certain imported roast holders invoiced as "Carve-Aid[s]" were classified by the collector of customs as forks, and, accordingly, were assessed with duty at the rate of 4 cents each and 17½ per centum ad valorem, pursuant to the provisions of paragraph 355 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739.

It is the claim of the plaintiff herein that said merchandise is dutiable at the rate of 3.85 cents per pound and 19 per centum ad valorem, as table or household utensils, composed wholly or in chief value of aluminum, as provided in paragraph 339 of said act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108.

The language of the competing provisions reads as follows:

Paragraph 355 and T.D. 52739, *supra*:

Table, butcher's, carving, cooks', hunting, kitchen, bread, cake, pie, slicing, cigar, butter, vegetable, fruit, cheese, canning, fish, carpenters' bench, curriers', drawing, farriers', fleshing, hay, sugar-beet, beet-topping, tanners', plumbers', painters' palette, artists', shoe, and similar knives, forks, and steels, and cleavers, all the foregoing, finished or unfinished, not specially provided for:

\*       \*       \*       \*       \*       \*       \*

With handles of any other material (not including mother-of-pearl, shell, ivory, deer, or other animal horn, hard rubber, solid bone, celluloid,

pyroxylin, casein, or any material similar to pyroxylin or casein, and not including handles plated with and in chief value of silver) :

\*   \*   \*   \*   \*   \*   \*

4 inches or more long, exclusive of handle, and not
 specially designed for other than household,
 kitchen, or butchers' use_____4¢ each and 17½%
                   ad val.

Paragraph 339 and T.D. 54108, *supra*:

Table, household, kitchen, and hospital utensils, and hallow or flat ware, not specially provided for, whether or not containing electrical heating elements as constituent parts:

\*   \*   \*   \*   \*   \*   \*

Composed wholly or in chief value of aluminum_____3.85¢ per lb. and
                   19% ad val.

A sample of the imported merchandise is in evidence as plaintiff's exhibit 1. It is an article used to hold down a roast for carving, having two sharp straight prongs inserted into the extended arms of a tubular U-shaped piece. Rising from the top center of the horizontal member is a short shank with flattened head, which serves as a handle or grip. Between the horizontal and the handle, but closer to the former, the shaft is encircled by an oval shoulder. The top portion of the article may be said to be similar to the top of a grip-type corkscrew or bottle opener. The parties have stipulated that the subject carve-aid roast holders are in chief value of aluminum, not plated with platinum, gold, or silver, and are chiefly used in the household or kitchen.

Other exhibits include a page from plaintiff's catalog advertising the imported article (plaintiff's illustrative exhibit 2) and certain other varieties of roast holders, differing in several essentials from plaintiff's exhibit 1 (plaintiff's exhibits 3, 4, and 5, respectively).

Evidence developed through the testimony of Fred R. Sanford, president of plaintiff, and of Rudolph J. Kraus, a houseware buyer for a department store in San Francisco, establishes that the item herein described as "Carve-Aid" is sold throughout the United States as a carving instrument or a roast holder, not as a fork. It is used to pierce and hold roasts to facilitate carving, but cannot be used to carry or lift any foods, or for serving.

It is the contention of plaintiff that, by virtue of design, appearance, use, and commercial description, the instant carving aids are not forks within the common concept thereof and, hence, were erroneously so classified by the collector. Apparently, plaintiff's position is predicated upon the proposition that the imported articles are so unlike the common table fork in appearance and use as to be distinguishable therefrom for tariff purposes.

Despite the reference to the manner in which the merchandise at bar is commercially distributed, and the name under which it is sold, there is no contention here that commercial designation, as that rule of construction has been interpreted and applied in customs jurisprudence, affects the classification of the instant importation. Both parties acknowledge that the term "forks" in paragraph 355, as modified, *supra*, is to be construed in accordance with its common meaning, and advert to the definitions of the term, quoted with approval in the cases of *National Silver Co.* v. *United States*, 4 Cust. Ct. 204, C.D. 322, and *Irvin Ware Co.* v. *United States*, 40 Cust. Ct. 281, C.D. 1994, involving, respectively, salad forks, and so-called ejector forks.

In the *National Silver Co.* case, *supra*, this court quoted the following definition from Webster's New International Dictionary:

An instrument or implement consisting of a handle with a shank terminating in two or more prongs or tines, which are usually of metal, parallel and slightly

curved, used for piercing, holding, taking up, or pitching anything; specif., a small instrument of this description for use at the table in manipulating food. * * *

The following definition from Webster's New International Dictionary, second edition, 1953, was cited in the *Irvin Ware Co.* case, *supra*:

An instrument or implement consisting of a handle with a shank terminating in two or more prongs or tines, used for piercing, holding, taking up, or pitching anything. * * *

Counsel for plaintiff suggests that the instant merchandise, not being curved, and not being a small instrument, would not be embraced within the first of the foregoing definitions. As respects the size of the instrument, it is sufficient to observe that since both the statute and the trade agreement make reference to forks more than 4 inches long, exclusive of handles, the fact that the articles at bar are not small utensils is manifestly irrelevant. Neither do we believe that the characteristic of slightly curved prongs is a *sine qua non* in the determination of what is or is not a fork for tariff purposes.

So far as the second definition is concerned, it seems clear that these meat holders are literally described thereby. They are implements consisting of handles with shanks terminating in two or more prongs or tines, which are used for piercing and holding. Adaptability for use being expressed in the alternative, it is not essential that every fork possess the capacity to pierce, hold, take up, *and* pitch anything.

Nor do we find in this case any occasion to limit the scope of these broad definitions of the term "forks" under the rule of the cases of *United Enterprises et al.* v. *United States*, 41 Cust. Ct. 73, C.D. 2023, and *United States* v. *Quon Quon Company*, 46 C.C.P.A. (Customs) 70, C.A.D. 699, cited by plaintiff.

What prompted the court in the *United Enterprises* case, *supra*, to adopt a restricted meaning for the term "screens" there under consideration was a recognition of the fact that, if taken in a literal sense, the definition would embrace a variety of articles not commonly known as screens, nor intended by Congress to be covered by the provision for screens.

In the *Quon Quon* case, *supra*, our appellate court was inclined to interpret the tariff term "baskets" in the light of the known general uses of baskets, so as to avoid the anomaly of classifying as a basket, an article which, though falling within the literal scope of the definition thereof, was in fact useful only as part of a piece of furniture.

In the instant case, however, the subject item not only responds to the literal definition of the term "fork," but is also designed for some of the uses to which forks are ordinarily applied, to wit, piercing and holding. When used for those purposes, these carve aids accomplish exactly what a carving fork is designed to accomplish, and that is to hold a roast firmly and securely to prevent its slipping during the carving operation.

We deem it immaterial that other carving implements, such as exhibits 3, 4, and 5, would not be considered forks for tariff purposes, since in no event would any of them meet the definition for forks, whereas both by description and use the imported item is covered by that definition.

It must be remembered, moreover, that the provision for forks, both as originally enacted in paragraph 355 of the Tariff Act of 1930, and as modified by the Torquay protocol, *supra*, is an extremely broad one. As applied to forks generally recognized as susceptible of use in the household, there are included, table, carving, cooks', cake, pie, slicing, vegetable, fruit, cheese, and fish forks. Obviously, Congress was not legislating simply with respect to the common variety of table fork used during the service and eating of meals. It is clear

that within this comprehensive enumeration, there exists such a diversity of size, shape, and use as to make only the broadest of definitions truly applicable.

Based upon the foregoing considerations, it is our view that the instant meat holders are forks within the contemplation of paragraph 355, as modified, *supra*, and the collector properly so classified them. All claims in this protest are, therefore, overruled.

Judgment will be entered accordingly.