No. 69359.—Air Express International Corp. and Braniff International Airways *v.* United States, protests 58/67 and 305859-K (E) (Tampa).

FORD, Judge:   The merchandise covered by the two protests presently before the court, which have been consolidated for purposes of decision, consists of certain articles variously described as cocktail forks or cocktail picks. Upon importation into the United States from Peru, said articles were classified by

the collector of customs as forks with handles of silver, within the provisions of paragraph 355 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 355), as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 138, T.D. 52476, and were assessed with duty at the rate of 8 cents each and 17½ per centum ad valorem.

It is the contention of plaintiffs herein that the merchandise in issue should properly have been classified as articles or wares, not specially provided for, composed wholly or in chief value of silver, within the purview of paragraph 397 of said act, as modified, *supra* (19 U.S.C. § 1001, par. 397), and assessed with duty at the rate of 25 per centum ad valorem.

For ready reference, we set forth the pertinent provisions of the tariff act:

Paragraph 355 of the Tariff Act of 1930, as modified, *supra*, the basis of the collector's classification:

Table, butchers', carving, cooks', hunting, kitchen, bread, cake, pie, slicing, cigar, butter, vegetable, fruit, cheese, canning, fish, carpenters' bench, curriers' drawing, farriers', fleshing, hay, sugar-beet, beet-topping, tanners', plumbers', painters', palette, artists', shoe, and similar knives, forks, and steels, and cleavers, all the foregoing, finished or unfinished, not specially provided for:

> With handles of silver (not including handles plated with silver) or other metal than aluminum, nickel silver, iron or steel, and if not specially designed for other than household, kitchen, or butchers' use _____ 8¢ each and
> 17½% ad val.

Paragraph 397, as modified and supplemented, *supra*, as claimed:

Articles or wares not specially provided for, if composed wholly or in chief value of silver, whether partly or wholly manufactured_____ 25% ad val.

The record upon which this case has been presented for determination consists of the testimony of two witnesses who appeared on behalf of plaintiffs and the introduction in evidence of certain exhibits which will be referred to, *infra*.

There is agreement between the parties that the merchandise in issue was classified by the collector within the provisions of paragraph 355 of the Tariff Act of 1930, as modified by the Annecy protocol, *supra*, as forks with silver handles, not specially designed for other than household, kitchen, or butchers' use. The parties are also in agreement that the imported articles are in chief value of silver.

Eugene F. Smith was called to testify as plaintiffs' first witness. He stated he has been sales manager for Royce Shanley, Inc., a retail and wholesale silverware company, for the past 7 years. In said capacity, he buys and sells sterling silver, silver-plated, stainless steel, and other types of cutlery. For 8 years prior thereto, he had been employed with the Walters Corp., a similar organization, where he had been a salesman and eventually secretary of the firm.

After examining exhibit 1, an item representative of the imported merchandise, Smith stated that his firm did not handle such merchandise and that, in his 15 years' experience in the cutlery trade, he had never seen such an item. He stated, further, if such an item were offered to him for sales purposes, he would not purchase it because of its fragile nature. The witness stated he would not call exhibit 1 a fork because it is too fragile but considered it to be a pick. It was this witness' testimony that—

* * * The only items that I could see that this would be able to handle an order of some sort, for instance, an olive, cherry, etc. It would not be feasible to use it on a piece of ham. It would not be feasible to put in your mouth, it

is too sharp, even as an hors d'oeuvre I wouldn't purchase the same, because it is too fragile; it would cost more to repair.

Smith named the following types of forks in which he had dealt over the past 15 years as including olive or pickle forks, lemon forks, meat forks, salad or luncheon forks, cocktail forks, fish forks, lobster forks, and snail forks. He testified all these named forks would be larger and sturdier than exhibit 1. He stated also that he deals in one and two-prong picks, which are also sturdier than plaintiffs' exhibit 1 which latter, in his opinion, would not serve the purpose of either picks or forks.

On cross-examination, Witness Smith stated that exhibit 1, which has a hook at the top of the fork, could be hung on a cocktail glass or something similar. He stated, further, that exhibit 1 could be used to pick up a cherry or an olive in a cocktail glass and could be used to pierce and pick up a small cocktail frankfurter, but that he doubts it could pierce and lift a slice of pineapple.

The witness stated that there is no particular definition known to him which would encompass everything he knows as a fork.

There was received in evidence as defendant's exhibit A a duplicate of exhibit 1 in order to have in evidence one of the imported forks which had not been subjected to bending.

Plaintiffs' second witness was Charles Bollinger who stated his occupation to be station manager of Braniff International Airways at the New York International Airport (now designated the John F. Kennedy International Airport). As station manager, his duties are administrative and he is mainly responsible for all his company's ground activities at said airport. He is familiar with the articles before the court from his personal observation of them and from information pertaining thereto published by his company. Bollinger stated that exhibit 1 is given away attached to the menus on its Silver Service flights. That service was commenced with the opening of the route between New York and Dallas, Tex., and as part of the advertising for said flights the airline issued what it called Silver Service menus. An article such as exhibit 1 was attached to the centerfold of said menus together with a card informing the passengers that it was a favor to be kept by them. One of said menus was received in evidence as plaintiffs' exhibit 3 to show how articles like exhibit 1 are distributed by the airline.

Bollinger testified to the fact that while a passenger on one of his company's Silver Service flights he did not see anybody using an article such as exhibit 1.

As part of his duties as station manager, Bollinger had occasion to have a survey made as to the number of menus and articles similar to exhibit 1 that were left by the passengers in order to determine if it was a popular item. The conclusion arrived at was that this particular item was probably the least popular of the various items the airline had given away. This was based on the number of menus found on the aircraft at the termination of flights.

The article in issue, represented by plaintiffs' exhibit 1 and defendant's exhibit A, agreed by the parties to be in chief value of silver, measures approximately $3\frac{1}{4}$ inches in overall length. The handle thereof consists of the figure of a llama, affixed to a shank, approximately $2\frac{1}{4}$ inches long terminating at one end in a hook at the back of the handle and at the other end in two prongs or tines, approximating $\frac{5}{8}$ of an inch in length.

It is the contention of plaintiffs that the imported merchandise is of such fragile construction as to be of no use other than as a novelty item; that it is not in fact sold commercially; and that it does not respond to the trade designation of a fork. Alternatively, it is contended by plaintiffs that said merchandise is unknown in the cutlery trade but most resembles an article known as a "cocktail pick."

On the other hand, it is the contention of defendant that the imported item responds to the common meaning of the word "fork," as used in paragraph 355 of the Tariff Act of 1930, as modified, invoked by the collector of customs, and that plaintiffs have failed to overcome the presumption of correctness attaching to said classification.

As to plaintiffs' contention that the imported article is of such fragile construction as to deprive it of utility, an inspection of exhibit 1 discloses that the item appears to possess strength adequate for the purposes for which it was produced. And this fact would seem to be supported by the testimony of plaintiffs' Witness Smith who, on cross-examination, stated that exhibit 1 could be used to pick up a cherry or olive in a cocktail glass and could be used to pierce and pick up a small cocktail frankfurter.

The provision for forks in paragraph 355 of the tariff act has been the subject of consideration by this court in several cases. In *National Silver Co.* v. *United States*, 4 Cust. Ct. 204, C.D. 322, a fork used at the table for mixing or serving salad or other vegetables was held to be a table fork. In the case of *Irvin Ware Co.* v. *United States*, 40 Cust. Ct. 281, C.D. 1994, certain articles, which were so constructed that in preparing canapes and hors d'oeuvres they could be used to pick up olives, pieces of meat, or other items of food, and, by an ejector attachment, place them in appropriate arrangement on a serving dish or tray, were held to be within the statutory provision for forks. In the *National Silver* case, the court quoted the following definition from Webster's New International Dictionary:

Fork. n. 1. An instrument or implement consisting of a handle with a shank terminating in two or more prongs or tines, which are usually of metal, parallel and slightly curved, used for piercing, holding, taking up, or pitching anything; specif., a small instrument of this description for use at the table in manipulating food. * * *

and, in the *Irvin Ware* case, quoted from the Webster's New International Dictionary, second edition, 1953, as follows:

fork. *n*. 1. An instrument or implement consisting of a handle with a shank terminating in two or more prongs or tines, used for piercing, holding, taking up, or pitching anything. * * *

In the *Irvin* case, *supra*, the court found that the article there in issue responded to the definition "in that it is an instrument or implement consisting of a handle with a shank terminating in two or more prongs or tines and used for piercing, holding, or taking up something, and it accords with our understanding of the term 'fork.' The mere fact that the fork is equipped with an ejector feature does not, in our opinion, remove it from the popular undertanding of the word 'fork.' "

The same definition was relied upon by this court in the case of *Fred Roberts Co.* v. *United States*, 43 Cust. Ct. 388, Abstract 63483, wherein the classification by the collector of customs of certain roast holders as forks within the purview of paragraph 355 of the Tariff Act of 1930, as modified, was sustained. In the course of its decision, the court said:

* * * They [the roast holders, invoiced as "Carve-Aid[s]"] are implements consisting of handles with shanks terminating in two or more prongs or tines, which are used for piercing and holding. Adaptability for use being expressed in the alternative, it is not essential that every fork possess the capacity to pierce, hold, take up, *and* pitch anything. [Italics quoted.]

*       *       *       *       *       *       *

It must be remembered, moreover, that the provision for forks, both as originally enacted in paragraph 355 of the Tariff Act of 1930, and as modified by the Torquay protocol, *supra*, is an extremely broad one. As applied to forks generally recognized as susceptible of use in the household, there are included,

table, carving, cooks', cake, pie, slicing, vegetable, fruit, cheese, and fish forks. Obviously, Congress was not legislating simply with respect to the common variety of table fork used during the service and eating of meals. It is clear that within this comprehensive enumeration, there exists such a diversity of size, shape, and use as to make only the broadest of definitions truly applicable.

Inasmuch as the article presently in issue has been shown by the record before us to be an instrument or implement consisting of a handle with a shank terminating in two prongs or tines and is used for picking up a cherry or an olive in a cocktail glass, or to pierce and pick up a cocktail frankfurter, it would appear that said article comes within the dictionary definition of a fork.

The fact that said article is of fragile construction does not deter us from this view, in the light of the case of *W. C. Sullivan & Company* v. *United States*, 52 Cust. Ct. 290, Abstract 68366, wherein certain hats, composed of chip and worn principally by children, were held to come within the provision for hats in paragraph 1504(b) of the Tariff Act of 1930, as modified. In the course of the opinion in that case, the court stated—

It is apparent from the record herein that the imported merchandise falls within the common meaning of the term "hat," since it is fit to be worn as a covering for the heads of children. The fact that a hat is flimsily constructed and might not be colorfast does not detract from its being a hat, any more than a phonograph is less of a phonograph, because it is flimsily constructed, as in the case of *Louis Wolf & Co., Bing Wolf Corp.* v. *United States*, 19 Ct. Cust. Appls. 132, T.D. 45258, wherein the court made the following conclusion:

> We conclude upon the record before us that the merchandise involved is a phonograph. It may be a poor one, but, as far as we are advised, it lacks no essential element necessary to entitle it to be regarded as such for tariff purposes. * * *

Plaintiffs contend that the case at bar is on all fours with the case of *M. Pressner & Co.* v. *United States*, 44 Cust. Ct. 10, C.D. 2145, wherein certain flimsily constructed and inexpensive miniature knives, which had been classified by the collector as hunting knives in paragraph 355, as modified, were held by the court to be metal articles, not specially provided for, in paragraph 397 of the Tariff Act of 1930, as modified. In the course of decision in that case, the court quoted the following definition of "hunting knife" from the Webster's New Collegiate Dictionary (1956):

hunting knife. A large, stout, very sharp knife used to skin and cut up, and sometimes to dispatch, game.

It then stated as follows:

A physical examination of exhibit 1 indicates that it is a rather flimsily constructed item having a blade inserted in a wooden handle fastened by two small rivets and entirely lacking in the characteristics of a hunting knife, as indicated in the above definition.

The testimony of witnesses Colter and Friedberg stands unrefuted. Their statements, together with a physical examination of exhibits 1 and 2, satisfy us that plaintiff has made out a *prima facie* case establishing that the merchandise represented by exhibit 1 is not a hunting knife within the meaning of that term as used in paragraph 355, *supra*.

We believe the *Pressner* case, *supra*, is clearly distinguishable from the case presently before the court in that the article here in issue comes within the dictionary definition of the generic term "fork" and the broad application given thereto by the judicial authorities above cited, and on the further ground of failure of proof in the instant case.

As was stated by our appellate court in *F. H. Kaysing* v. *United States*, 49 CCPA 69, C.A.D. 798—

It is well settled that in a controversy of this nature it is presumed that the collector's classification is correct and that he "found all the necessary facts to

exist which brought the goods within that classification." *United States* v. *Lilly & Co. et al.*, 14 Ct. Cust. Appls. 332, T.D. 41970.

After due consideration of the record upon which the instant case has been presented for determination, we are of the opinion that plaintiffs have failed to overcome the presumption of correctness attaching to the collector's classification of the imported merchandise as forks within the purview of paragraph 355 of the Tariff Act of 1930, as modified, *supra*. Accordingly, the claim in the protests is overruled.

In view of the foregoing, it is unnecessary for us to determine whether or not protest 305859–K(E) constitutes a valid protest, its 'sufficiency being open to question.

Judgment will issue accordingly.