(C.D. 3156)

AMTHOR IMPORTS
THORNLEY & PITT
} *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 16, 1967)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: Certain merchandise invoiced as "brass corn holders" was classified by the collector of customs at the port of San Francisco, California, as forks under the provisions of item 650.49 of the Tariff Schedules of the United States and, accordingly, was assessed with duty at the rate of 1 cent each, plus 17.5 per centum ad valorem.

Plaintiffs in two protests consolidated for the purposes of trial contend that the importations should be classified as table implements of brass under item 651.49 of the Tariff Schedules of the United States which are dutiable at 10 per centum ad valorem or, in the alternative, as table articles of brass under the provisions of item 654.00 of the said Tariff Schedules of the United States and, hence, dutiable at 10 per centum ad valorem.

For ready reference, the pertinent language of the competing provisions is set forth as follows:

Tariff Schedules of the United States:

Schedule 6, part 3:

Subpart E.–Tools, Cutlery, Forks and Spoons

\* \* \* \* \* \* \*

Forks, spoons, and ladles, all the foregoing which are kitchen or table ware, with or without their handles:
Forks:

\* \* \* \* \* \* \*

With their handles:

\* \* \* \* \* \* \*

Other:

\* \* \* \* \* \* \*

[Item] 650.49      Other _ 1¢ each + 17.5% ad val.

\* \* \* \* \* \*

Hand tools (including table, kitchen, and household implements of the character of hand tools) not specially provided for, and metal parts thereof:

\* \* \* \* \* \* \*

Other hand tools:
     \* \* \* and parts thereof

\* \* \* \* \* \* \*

Other:

\* \* \* \* \* \* \*

[Item] 651.49      Of copper:
     Of brass_____ 10% ad val.

Subpart F.–Miscellaneous Metal Products

\* \* \* \* \* \* \*

Articles not specially provided for of a type used for household, table, or kitchen use; toilet and sanitary wares; all the foregoing and parts thereof, of metal:

\* \* \* \* \* \* \*

Articles, wares, and parts, of base metal, not coated or plated with precious metal:

\* \* \* \* \* \* \*

[Item] 654.00      Of copper:
     Of brass_____ 10% ad val.

The record in this case consists of the oral testimony of one witness and two exhibits introduced by the plaintiff.

Both exhibits represent samples of the imported merchandise. Exhibit 1 was referred to during the trial as type "A" and exhibit 2 as type "B."

The testimony establishes that both types of the imported corn holders are used for the same purpose and in the same manner. They are used in pairs by inserting one in each end of an ear of corn on the cob in order to hold it while eating. They are both in one piece and have two prongs or tines emanating from the end and measure approximately 4 inches in overall length. The only apparent essential difference between the two exhibits is in the design of the upper part. Exhibit 1 has four straight vertical sides ending in a curved section hereinafter more specifically adverted to, and exhibit 2 is in the form of an oriental woman holding a jug atop her head with one hand. The parties have stipulated that both exhibits are in chief value of brass, not coated or plated with precious metal.

Mr. Richard M. Reed, the sole witness, testified on behalf of the plaintiffs that he was the manager of Amthor Imports, one of the plaintiffs herein, for 3 years, and that his duties consisted of supervising the importation and transportation of merchandise, placing of overseas orders and corresponding with buyers and overseas offices. He testified that the sales of the merchandise at bar were made through his company's retail store in San Francisco, California, and to other purchasers who have stores throughout the United States; that, while he was familiar with both items and observed their sale, he was not certain as to the method of packaging.

The witness further testified that he had used the articles in his own home but has not observed their use in any other place; that they have two tines or prongs which are inserted into each end of the corncob to avoid getting butter on one's hands; and that he has never seen them used as forks.

On cross-examination, the witness testified that his observation of the use of the articles was limited to his own home and during his youth when he used plastic corn holders to eat corn on the cob. After examining exhibit 1, he testified that it has a handle, but it appears that he was not clear as to the location of a shank, if any. However, with respect to exhibit 2, he testified that the handle does not terminate in a shank.

The sole issue before us is whether the instant corn holders are forks within the meaning of the term as used in item 650.49 of the Tariff Schedules of the United States.

It appears that both parties acknowledge that the term "forks" as used in the said Tariff Schedules of the United States is to be construed in accordance with its common meaning.

Plaintiffs contend that, by virtue of appearance, physical structure, and the nature of their use, the controverted articles are not "forks" within the common concept thereof and, therefore, have been erroneously so classified by the collector.

The defendant contends that the imported items respond to the common meaning of the term "fork" and that plaintiffs have failed to overcome the presumption of correctness attaching to the collector's classification.

Plaintiffs' brief quotes the following definition of the term "fork" from Webster's New International Dictionary, second edition, 1953, cited with approval by this court in the cases of *Irvin Ware Co.* v. *United States*, 40 Cust. Ct. 281, C.D. 1994, and *Fred Roberts Co.* v. *United States*, 43 Cust. Ct. 388, Abstract 63483:

An instrument or implement consisting of a handle with a shank terminating in two or more prongs or tines, used for piercing, holding, taking up, or pitching anything.

Counsel for the plaintiffs argues that the importations herein do not respond to the foregoing definition as they do not have a shank terminating in two or more prongs or tines since the prongs or tines emanate directly from the handle. He contends that the absence of a shank creates a material distinction in the nature of the use of the corn holders as contrasted with that of forks; that forks are used either to pick up food or to hold it on a plate while it is being cut and that the shank makes it easier to use for that purpose. They are, therefore, unlike the instant corn holders which are designed without a shank and are inserted in an ear of the corncob and remain therein while in use.

As an aid to our understanding of the meaning of the term "shank," we resort to the definition thereof in Webster's New International Dictionary, second edition, which reads as follows:

3. Hence, that part of an instrument, tool or other thing which connects the acting part with a handle or other part, by which it is held or moved, as the straight part of a fish hook or stem of a tobacco pipe.

It appears from the foregoing definition that the shank is a part of an implement which may serve a practical and utilitarian purpose as a connector of the handle with the acting part of an implement.

A physical examination of exhibit 1 or type "A" reveals that it has a shank. The shank is circular in form and is approximately ½ inch in length and in diameter. It is readily distinguishable from the handle which is straight in form. The two prongs or tines or the acting part of the article emanate therefrom.

In exhibit 2 or type "B," the article is in the form of a figure of an oriental woman holding a jardiniere atop her head with her right hand with the two tines or prongs serving as her legs. It appears that, from the waist upward to the top of the vessel, approximately half the length of the brass section, the figure is curved and can be held or

grasped in the manner of a handle. Below the waist, the figure of the woman is straight and seemingly serves the same purpose and utility as a shank from which two tines or prongs emanate.

Not only do the subject items respond to both the aforesaid definitions, but the record reveals that they are designed and used for the purpose for which forks are ordinarily used in piercing, taking up food, and holding it while eating.

While plaintiffs contend that the articles at bar differ materially in size, shape, and appearance from what is commonly known as a "fork," we find no merit in that argument. There is no precise description of a fork which embraces one tined object for piercing or holding to the exclusion of any other.

In construing the term as it appeared in the predecessor provision, paragraph 355 of the Tariff Act of 1930, in the *Roberts* case, *supra*, this court had occasion to observe:

* * * Obviously, Congress was not legislating simply with respect to the common variety of table fork used during the service and eating of meals. It is clear that within this comprehensive enumeration, there exists such a diversity of size, shape, and use as to make only the broadest of definitions truly applicable.

Confirming the reasoning and decision in the *Roberts* case, *supra*, this court held in *Air Express International Corp. and Braniff International Airways* v. *United States*, 54 Cust. Ct. 450, Abstract 69359, that certain cocktail forks or picks of fragile construction were forks within the purview of paragraph 355 of the Tariff Act of 1930, as modified, notwithstanding a limited capability of lifting foods.

Although the *Roberts* decision resulted from the very extensive enumeration of many different types of forks in the provision under consideration, we are nevertheless of opinion that the word "fork" standing alone is a broad and comprehensive term embracing many varieties of tined objects used for piercing, holding, etc.

After due consideration of the record upon which the instant case has been presented for determination, we are of the opinion that plaintiffs have failed to overcome the presumption of correctness attaching to the collector's classification of the imported merchandise as forks within the purview of item 650.49 of the Tariff Schedules of the United States. Accordingly, the claim in the protests is overruled.

Judgment will be entered accordingly.